# In the United States Court of Federal Claims

BID PROTEST
No. 18-1474C
(Filed: October 2, 2018)

| | |
|---|---|
| TIMBERLINE HELICOPTERS, INC., ) ) ) Plaintiff, ) ) v. ) ) THE UNITED STATES OF AMERICA, ) ) Defendant. ) ) | Keywords: Temporary Restraining Order; Preliminary Injunction; Bid Protest; <u>Rex Service Corp.</u>; Prospective Bidder |

*Theodore P. Watson* and *Wojciech Z. Kornacki*, Watson & Associates, LLC, Aurora, CO, for Plaintiff.

*John S. Groat*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, with whom were *Joseph H. Hunt*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Steven J. Gillingham*, Assistant Director, for Defendant. *William B. Blake*, U.S. Department of the Interior, Of Counsel.

**OPINION AND ORDER**

Currently before the Court in this post-award bid protest is the motion of Plaintiff Timberline Helicopters, Inc. ("Timberline") for a temporary restraining order and preliminary injunction. Timberline requests that the Court issue an order halting the performance of a contract between PJ Helicopters and the Department of Interior's Bureau of Land Management ("BLM") during the pendency of this litigation. Under the contract, which was awarded over a year ago on June 29, 2017, PJ Helicopters supplies BLM with aerial transportation of personnel in connection with BLM's firefighting and fire suppression missions.

The Court held a telephonic hearing on the motion on Friday, September 28, 2018. For the reasons set forth below, Timberline's motion is **DENIED**.[1]

---

[1] The Court advised the parties of its intent to deny the motion after it heard argument on September 28.

## BACKGROUND

In February 2017, BLM issued Solicitation number D17PS00157 ("Solicitation") seeking offers to supply contractor-operated and -maintained "Exclusive Use Helicopter flight services for 120 calendar days" (May 15 through September 11). Post-Award Procurement Protest Compl. ("Compl.") ¶ 7, ECF No. 1. These services would be used to transport personnel in connection with the Department's firefighting and fire suppression missions. Id. ¶¶ 1–8. See also Solicitation No. D17PS00157 Ex. A, at 6, ECF No. 1-1. The IDIQ contract had a base period from May 1, 2017 through April 30, 2018, with four one-year option periods. Mot. for Temp. Restraining Order & Prelim. Injunction ("TRO Mot.") at 1, ECF No. 4.

Timberline considered submitting an offer in response to the Solicitation, but it ultimately did not do so. It contends that it did not submit an offer because a "restricted category civil aircraft" could not lawfully provide the requested services under Federal Aviation Administration ("FAA") regulations, and because BLM was unwilling to issue a public aircraft operation ("PAO") declaration to the awardee of the contract. According to Timberline, the PAO would have enabled it to provide the services consistent with FAA regulations. TRO Mot. at 2. See also Compl. ¶ 97; Storro Aff. Ex. J ¶ 51, ECF No. 1-4.

Before the Solicitation closed, Timberline lodged a bid protest with the Government Accountability Office ("GAO"). Storro Aff. Ex. J ¶ 32, ECF No. 1-4. It argued that the Solicitation was defective "because no helicopter can meet the solicitation requirements and comply with applicable [FAA] regulations regarding the transport of qualified non-crewmembers." Timberline Helicopters, Inc., B-414507, 2017 WL 2839592 (Comp. Gen. June 27, 2017), Ex. K, at 1, ECF No. 1-4.

GAO denied Timberline's protest on June 27, 2017. See id. GAO reasoned that "[w]here a protester alleges that performance is impossible, we will not substitute our judgment for that of the agency or sustain the protest in the absence of clear and convincing evidence that the specifications are in fact impossible to meet or unduly restrict competition." Id. at 3–4. It concluded that Timberline had failed to make this showing, relying upon an FAA opinion letter that BLM had secured in August of 2016. Id. at 3–4. That letter opined that in some circumstances firefighters could be transported on "restricted category" aircraft so long as the aircraft's certification contained the special purpose of forest and wildlife conservation. Id.

Soon thereafter, on June 29, 2017, BLM awarded the contract to PJ Helicopters. See Storro Ex. J ¶¶ 36–38, ECF No. 1-4. Thereafter, the FAA (apparently at the request of Timberline) initiated a review of the use of restricted category aircraft under the BLM contract. See FAA Memorandum May 24, 2018, Ex. H, at 1, ECF No. 1-3. In a Memorandum dated May 24, 2018, the agency opined that under 14 C.F.R. § 91.313(d)(3) and (4) the special purpose forest and wildlife conservation certification only authorized the carriage of persons who were "actually participating in the special purpose operation, which is the aerial dispensing of liquid for firefighting" or those who were "essential to that aerial dispensing of liquid." Id. at 2. "Transportation of firefighters for ground firefighting from one location to another," the FAA observed, "is not related to the special purpose for which the aircraft is certificated." Id.

Apparently in light of this opinion, on August 1, 2018, BLM provided PJ Helicopters with a PAO, which authorized it to continue transporting firefighters in its aircraft, as required by the contract. Compl. ¶ 60. Timberline filed the present bid protest about seven weeks later, on September 26, 2018. In its complaint, Timberline contends that BLM's refusal to assure offerors on the solicitation that it would issue a blanket PAO and its subsequent decision to issue a PAO to PJ Helicopters (rather than reopening competition for the contract) violated the Competition in Contracting Act of 1984 ("CICA"), 31 U.S.C. §§ 3551–3556. See id. ¶ 1. Timberline requests that this Court order BLM to resolicit offers for the contract and award it attorneys' fees and costs. Id. ¶ 2.

On the same day it filed its complaint, Timberline filed the present motion for a temporary restraining order and preliminary injunction. In its motion, Timberline requests that the Court issue an order "requiring the BLM to stop contract performance under the Solicitation because it violated CICA, and to allow Timberline to submit its proposal for the remainder of the contract." See TRO Mot. at 8.

## DISCUSSION

A temporary restraining order is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (citing 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, 129–30 (2d ed.1995)).  To warrant temporary or preliminary relief, the moving party must demonstrate that: (1) it is likely to succeed on the merits; (2) it will be irreparably harmed without interim injunctive relief; (3) the balance of hardships tips in its favor; and (4) the public interest favors the grant of injunctive relief. Am. Signature, Inc. v. United States, 598 F.3d 816, 823 (Fed. Cir. 2010) (citing Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 19 (2008)). See also Erico Int'l Corp. v. Vutec Corp., 516 F.3d 1350, 1353–54 (Fed. Cir. 2008) (discussing injunctive relief in a patent context); FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993).  In this case, the Court concludes that the balance of equities tips against an award of temporary or preliminary relief.

First, Timberline has failed to meet its burden of establishing that it has a substantial likelihood of success on the merits if for no other reason than that it is unclear that it has standing to pursue them. In order to establish standing to sue in a bid protest, a plaintiff must show that it is an "interested party" within the meaning of 28 U.S.C. § 1491(a), i.e., that it is an "actual or prospective bidder[] or offeror[] whose direct economic interest would be affected by the award of the contract or by failure to award the contract." Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006). See also CGI Federal Inc.  v. United States, 779 F.3d 1346, 1348 (Fed. Cir. 2015).

"[T]he opportunity to qualify either as an actual or a prospective bidder ends when the proposal period ends." Rex Serv., 448 F.3d at 1307 (quoting MCI Telecomms. Corp. v. United States, 878 F.2d 362 (Fed. Cir. 1989)). In this case, Timberline did not submit an offer and, therefore, was not an actual offeror.  The real issue is whether it can still be considered a "prospective offeror" because it filed a GAO protest before the proposal period ended.  Under

3

some circumstances a party can retain its prospective-offeror status even after the proposal period ends, if it timely files an unsuccessful agency or GAO protest. In CGI, for example, the Court of Appeals found that a plaintiff retained its prospective-offeror status before the court where it "promptly initiated and diligently pressed its protest in the GAO forum" and then, when unsuccessful, "immediately [i.e., within days] filed for relief in court." In this case, Timberline waited some fifteen months after the GAO denied its protest before filing this lawsuit. That lengthy delay gives the Court pause as to whether Timberline has shown sufficient diligence to preserve its prospective-offeror status under the reasoning of CGI. Cf. Palantir Techs., Inc. v. United States, 128 Fed. Cl. 21 (2016) (holding that plaintiff had standing as a prospective offeror notwithstanding delay of forty-three days between denial of GAO protest and lawsuit).

In any case, Timberline's request for temporary or preliminary relief suffers from other defects. For one thing, "[i]t has often been observed that the purpose of the preliminary injunction is the preservation of the status quo and that an injunction may not issue if it would disturb the status quo." See Cont'l Serv. Grp. v. United States, 722 F. App'x 986, 994 (Fed. Cir. 2018), citing 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2948 (3d ed. 1998). Here, Timberline is not asking the Court to preserve the status quo. Timberline is asking the Court to stop PJ Helicopters' performance on a contract that it was awarded over a year ago and on which it has since been providing services to BLM.

Nor has Timberline established that it will suffer irreparable harm while this protest is pending that could be avoided if the Court were to issue the temporary or preliminary relief Timberline requests. According to Timberline, if the Court were to halt performance on the existing contract, BLM would be required to employ the transportation services provided under "other call-when-needed contracts." TRO Mot. at 6. So far as the Court can tell, Timberline is not the party to any such contracts. Thus, issuing the preliminary relief Timberline requests would not avoid the loss of profits that Timberline identifies as the irreparable harm that it will suffer while its protest is pending. In addition, preliminary relief is not needed to protect Timberline's opportunity to fairly compete, as it contends, because there is no procurement pending from which Timberline will be precluded from competing absent temporary or preliminary relief.

Finally, granting Timberline's request would inflict harm on the government and on the public interest by disrupting the orderly performance of firefighting and fire suppression services essential to the protection of property and the public safety. Particularly in light of Timberline's failure at this juncture to establish a likelihood of success on the merits or irreparable harm, and the Court's adoption of an expedited schedule for briefing dispositive motions, these governmental and public interests take precedence.

## CONCLUSION

On the basis of the foregoing, Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction is **DENIED**.

**IT IS SO ORDERED.**

                                                s/ Elaine D. Kaplan
                                                ELAINE D. KAPLAN
                                                Judge