# In the United States Court of Federal Claims

BID PROTEST
No. 18–1474C
(Filed Under Seal: November 2, 2018 | Reissued: November 13, 2018)*

|  |  |
|---|---|
| TIMBERLINE HELICOPTERS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE UNITED STATES OF AMERICA, ) <br> ) <br> Defendant. ) <br> ) | Keywords: Bid Protest; 28 U.S.C. § 1491(b); Standing; Interested Party; Prospective Bidder; <u>CGI Federal</u>; <u>Rex Service Corp.</u>; <u>Distributed Solutions</u>; <u>AT&T Communications, Inc. v. Wiltel, Inc.</u>; Cardinal Change; 41 U.S.C. § 3301(a)(1). |

*Theodore P. Watson* and *Wojciech Z. Kornacki*, Watson & Associates, LLC, Aurora, CO, for Plaintiff.

*John S. Groat*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, with whom were *Joseph H. Hunt*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Steven J. Gillingham*, Assistant Director, for Defendant. *William B. Blake*, U.S. Department of the Interior, Of Counsel.

**OPINION AND ORDER**

**KAPLAN, Judge.**

This bid protest arose out of a solicitation issued by the Department of Interior, Bureau of Land Management ("BLM") in 2017, seeking proposals to provide helicopter flight services to

---

* This opinion was previously issued under seal on November 2, 2018. The parties were given the opportunity to propose redactions on or before November 9, 2018. Because the parties have notified the Court that they do not have any proposed redactions (ECF No. 20), the Court reissues its decision without redactions.

BLM in aid of its fire-fighting and fire-suppression missions. The plaintiff, Timberline Helicopters, Inc. ("Timberline"), did not submit a proposal in response to the solicitation. It did, however, file a timely pre-award protest of the terms of the solicitation with the Government Accountability Office ("GAO").

In its GAO protest, Timberline contended that Federal Aviation Administration ("FAA") regulations prohibited the use of "restricted category aircraft" to transport firefighters, as was contemplated under the solicitation. According to Timberline, a contractor could not lawfully perform the services demanded by the solicitation unless the Department of the Interior issued a public aircraft operation ("PAO") declaration, which BLM—in response to questions—stated it did not intend to do.

GAO rejected Timberline's pre-award protest as well as a second protest that Timberline filed post-award. In particular, GAO was unpersuaded by Timberline's argument that the terms of the solicitation were inconsistent with law. GAO concluded that BLM had reasonably relied upon the advice of the FAA's Flight Standards District Office for Boise, Idaho, whose manager advised the Department of the Interior that provision of the contemplated services was permissible under FAA regulations.

In June of 2018, approximately ten months after the contract was awarded and performance had begun, and based on the advice of the FAA's Office of the Chief Counsel, the Acting Director of FAA's General Aviation and Commercial Division (in Washington, D.C.) notified the Department of the Interior that the opinion which it had been provided by the Boise District Office was incorrect. Thus, the FAA advised the Department of the Interior that restricted category aircraft could <u>not</u> be used to transport firefighters from one ground location to another to perform their fire-fighting and fire-suppression duties. In light of that advice, in August 2018 the Department of the Interior issued a PAO declaration to the contract awardee, PJ Helicopters, Inc.

Six weeks later, Timberline filed the present protest. It contends that—in light of the FAA's revised opinion—BLM was required by law to hold a new competition for the services covered by the 2017 solicitation. According to Timberline, BLM's failure to do so was arbitrary, capricious, and contrary to law.

Currently before the Court is the government's motion to dismiss Timberline's complaint in accordance with Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"). The government contends that Timberline lacks standing to bring this protest because it filed its complaint some eighteen months after the close of the solicitation period and more than a year after BLM awarded the contract to PJ Helicopters. It also contends, in the alternative, that Timberline has failed to state a claim upon which relief can be granted.

For the reasons set forth below, the government's motion to dismiss pursuant to RCFC 12(b)(1) is **GRANTED** and the Plaintiff's complaint is **DISMISSED** without prejudice.

## BACKGROUND[1]

### I.     The Solicitation

In February 2017, BLM issued Solicitation number D17PS00157 ("the Solicitation"). Admin. Record ("AR") Tab 1 at 1–96. Its purpose was "to obtain fully Contractor operated and maintained exclusive use helicopter flight services to transport qualified non-crewmembers and/or cargo in support of Government natural resource missions" for BLM. Id. at 10. The designated reporting base for the operations was Boise, Idaho. Id. at 4. The IDIQ contract had a base period from May 1, 2017 through April 30, 2018, with four one-year option periods. Id. at 4, 6.

Under the Solicitation, contractor services would include "provision of a helicopter, personnel, fuel servicing vehicle, fuel, and all other associated equipment." Id. at 10. The Solicitation further stated that "[m]issions may include, but are not limited to, fire suppression, fire monitoring, initial attack, prescribed fire and aerial ignition, law enforcement limited to nonthreatening surveillance and reconnaissance, hoist and fast rope insertion operations and other administrative and related resource activities." Id.

The Solicitation had a list of minimum aircraft requirements and target aircraft capabilities. Id. at 4–5. In addition, the Solicitation required that the aircraft possess either a "standard or restricted category airworthiness certificate." Id. at 4.

Under FAA regulations, "no person may be carried on a restricted category civil aircraft unless that person . . . [p]erforms an essential function in connection with a special purpose operation for which the aircraft is certified; or . . . [i]s necessary to accomplish the work activity directly associated with that special purpose." 14 C.F.R. § 91.313(d)(3)–(4) (2018). For purposes of the regulation, "special purpose operations" include, among others: agricultural (spraying, dusting, and seeding); forest and wildlife conservation; aerial surveying; patrolling; weather control; and aerial advertising. See 14 C.F.R. § 21.25(b).

In this case, the Solicitation required that restricted category aircraft employed to perform services under the contract "be certified under 14 CFR 21.25 (b)(2) 'Forest and Wildlife conservation.'" AR Tab 1 at 10. Alternatively, "[f]or aircraft offered which are certificated under any other portion of 14 CFR 21.25," offerors were required to "provide a letter from the FAA authorizing the carriage of firefighters under 14 CFR 91[.]313 (d)(3) and/or 14 CFR 91.313 (d)(4) on the offered aircraft as certified." Id.

Timberline as well as other putative offerors harbored concerns regarding whether FAA regulations permitted aircraft that were certificated for forest and wildlife conservation to transport firefighters from one ground location to another, as was contemplated under the Solicitation. The concerns were based on FAA Circular 00-1.1A (February 12, 2014), which

---

[1] The facts set forth below are based on the allegations in Timberline's complaint as well as the Administrative Record filed by the government.

states that it is the responsibility of civil operators "to refuse a contract to perform operations that would violate applicable 14 CFR regulations unless the operator is sure that the government entity offering the contract will be declaring them a public aircraft operation." AR Tab 10 at 143.[2]

In light of this regulatory guidance, several offerors (including Timberline) asked BLM to clarify whether it would "provide a public aircraft declaration for any and all flights which do not fall under the special purpose operations listed on the [Type Certificate Data Sheets] for the aircraft, including transportation of 'qualified non-crewmembers.'" AR Tab 13-D at 264. BLM responded that it had "no intent to issue a public aircraft declaration, [and that] the agency sustain[ed] its position that an aircraft which meets the requirements of this solicitation will be able to perform most missions listed under B1 Scope of Contract." Id.

## II.     Timberline's GAO Protests

On March 24, 2017, Timberline filed a pre-award bid protest with GAO, challenging the terms of the Solicitation. AR Tab 13 at 160. It contended that "no helicopter meeting or exceeding the Minimum Aircraft Requirements can perform under the terms of the RFP and comply with applicable [FAA] regulations regarding the transport of personnel absent the agency's issuance of a [PAO] declaration (something which the agency has stated that it has no intention of doing)." Id. Timberline observed that the aircraft were "not certified for any forest or wildlife conservation use other than dispensing liquids and forest conservation material." Id. at 166. It contended that under 14 C.F.R. § 91.313(d) they therefore could not be used to transport firefighters who were not engaged in the aerial dispensing of these liquids and materials. Id.[3]

---

[2] The statutory criteria for determining whether a government operation qualifies as a PAO are set forth in 49 U.S.C. §§ 40102(a)(41), 40125 (2012). According to FAA Advisory Circular No. 00-1.1A, where the government uses a contractor for a public aircraft operation, "[t]he contracting government entity should provide the civil contractor with a written declaration of public aircraft status for designated, qualified flights." AR Tab 10 at 142. Generally, "the FAA has no regulatory authority over PAO other than those requirements that apply to all aircraft operating in the [National Airspace System]." Id. at 141. A "public aircraft declaration" thus would largely shift responsibility for oversight of the helicopter services from the FAA to the Department of the Interior, so that FAA limitations on the use of restricted category aircraft would not apply. See id.

[3] As referenced above, 14 C.F.R. § 91.313(d) provides that "[n]o person may be carried on a restricted category civil aircraft unless that person— (1) Is a flight crewmember; (2) Is a flight crewmember trainee; (3) Performs an essential function in connection with a special purpose operation for which the aircraft is certificated; or (4) Is necessary to accomplish the work activity directly associated with that special purpose."

GAO denied Timberline's protest on June 27, 2017. AR Tab 20 at 313. It relied upon an August 23, 2016 letter that the Department of the Interior had procured from Robert Yaple, the manager of the FAA's Flight Standards District Office for Boise, Idaho. Id. at 316; see also AR Tab 8 at 134–36. GAO observed that Mr. Yaple had advised the Department of the Interior "that the carriage of firefighters is permitted on restricted category aircraft if the aircraft is certificated with a special purpose of Forest and Wildlife conservation." Id. GAO further noted that on March 15, 2017, BLM had sent a letter to Mr. Yaple in which it "again asked the FAA whether an aircraft with a current restricted airworthiness certificate on board with a special purpose of Forest and Wildlife conservation is permitted to carry firefighters." Id. at 317. Citing an email from John Drago, an FAA aviation safety inspector working out of the FAA's Commercial Operations Branch in Washington D.C., GAO found that the FAA had responded in the affirmative. Id. at 316; see also AR Tab 12 at 157–59.

Timberline filed a request for reconsideration with GAO on July 6, 2017. AR Tab 21 at 319. It argued that new information had come to light showing that the FAA had not yet made a final determination as to whether the firefighters could be considered "qualified non-crewmembers" on a restricted category aircraft within the meaning of 14 C.F.R. § 91.313(d)(3) and (4). Id. at 322. Timberline submitted a declaration from its CEO attesting to communications between himself and Mr. Drago, which suggested that the FAA did not yet have an official position regarding whether restricted category aircraft certificated for the special purpose of Forest and Wildlife conservation could be used to transport firefighters. See AR Tab 21-A at 326. In fact, according to Timberline, the FAA's Air Carrier group did not believe that such activity was lawful under FAA regulations. Id. at 327. Further, Timberline asserted that the FAA's Office of the Chief Counsel had before it a pending request to issue a legal interpretation regarding the matter. Id.

GAO denied Timberline's request for reconsideration on August 1, 2017. AR Tab 23 at 337. It concluded that "the new information relied upon by [Timberline] fail[ed] to demonstrate any material error of fact or law" in the prior decision. Id.

On the same day (August 1, 2017), BLM announced that it had awarded the contract to PJ Helicopters. AR Tab 24 at 341; Compl. Ex. J, at 4. Also on August 1, Timberline filed another protest with GAO. This time, Timberline argued that "BLM made an award under [the Solicitation] to an offeror proposing a restricted category helicopter knowing full well that FAA has no definitive position indicating that to transport[] firefighters in it, as required by the RFP, is legally permissible." AR Tab 24 at 347. It contended that PJ Helicopters would not be able to comply with the contract requirements and FAA regulations. See AR Tab 30 at 404 (GAO decision summarizing Timberline's argument). GAO dismissed the second protest on August 31, 2017. Id.

### III. The FAA Conducts a Formal Review of the Legal Issue

In the meantime, on August 10, 2017, Mr. Drago advised the Department of the Interior by email that the FAA had been contacted by several helicopter vendors inquiring about the lawfulness of the operations that were being performed under the helicopter services contract. AR Tab 48 at 519–20. Mr. Drago stated that the FAA was "concerned that there [was] still a disconnect with regard to which personnel are necessary or essential to the aerial dispensing of

liquids (ADL) special purpose operation when using a restricted category aircraft" and that "[t]he transportation of non-essential personnel constitutes impermissible transportation and requires compliance with additional [FAA] regulations." Id. at 520.

In the months that followed, FAA personnel continued to communicate with officials of the Department of the Interior. AR Tabs 49–59 at 522–57. Finally, on May 24, 2018, Lorelei Peter, Assistant Chief Counsel for Regulations at the FAA, sent a memorandum to John Duncan, the executive director of the FAA's Flight Standards Service.[4] AR Tab 60-C at 565. In her May 24, 2018 memorandum, Ms. Peter advised that under FAA regulations firefighters could not be transported "aboard a restricted category civil aircraft with the special purpose of forest and wildlife conservation (aerial dispensing of liquids) (ADL) to a location where they are used to extinguish the fire from the ground." Id. at 565–66. She observed that "[u]nder § 91.313(d)(3) or (4), the persons aboard the aircraft must actually be participating in the special purpose operation, which is the aerial dispensing of liquid for firefighting, or be essential to that aerial dispensing of liquid." Id. at 566. Furthermore, she opined that "[t]ransportation of firefighters for ground firefighting from one location to another is not related to the special purpose operation for which the aircraft is certificated." Id.

Two weeks later, on June 5, 2018, Everette C. Rochon, Jr., Acting Manager of the FAA's General Aviation and Commercial Division, wrote a letter to the Department of the Interior which he characterized as a "response" to its July 5, 2016 inquiry to the Boise Flight Standards Office. AR Tab 60 at 558. Mr. Rochon advised the Department of the Interior that based on the May 24, 2018 legal opinion described above, the FAA had concluded that "the operations described in the original inquiry would not be permitted under 14 CFR §§ 91.313(d)(3) and (4)." Id.

In the wake of this correspondence from the FAA, on June 7, 2018, the Department of the Interior advised PJ Helicopters "to conduct transportation of necessary or essential personnel (firefighters) as a Public Aircraft Operation (PAO) in accordance with definitions, direction, and guidance provided in [Title 49 of the U.S. Code] and [FAA] Circular 00-1.1A, dated 2/12/14." AR Tab 64-A at 587. The Department stated that it was "issuing this declaration in response to an FAA legal determination, which limited the contracted aircraft listed above from carrying firefighters as a civil operation when the appearance of a dual-purpose mission exists." Id. at 588.

### IV. The Present Bid Protest

Timberline apparently learned of the issuance of the PAO declaration at the beginning of August 2018. AR Tab 67 at 593. About seven weeks later, on September 25, 2018, Timberline filed the present bid protest. See generally Compl., ECF No. 1.

---

[4] Mr. Duncan had apparently requested a legal opinion from the Chief Counsel's office on February 28, 2018. AR Tab 60-C at 565.

In its complaint, Timberline argues, among other things, that BLM's decision to allow PJ Helicopters to perform the contract after the May 2018 FAA determination and BLM's "unilateral modification of the Solicitation requirements by issuing a PAO" to PJ Helicopters were arbitrary, capricious, and not in accordance with law. Compl. ¶¶ 130, 138. Timberline also claims that "the Agency abused its discretion because it awarded [a] contract to [PJ Helicopters] that would violate the applicable FAA regulations, and it allowed [PJ Helicopters] to continue to violate the applicable FAA regulations during the performance of the contract." Compl. ¶ 143. Further, according to Timberline, BLM's issuance of a PAO to PJ Helicopters was a "deficient corrective action [that] essentially materially modifie[d] the requirements of the contract and based on this it violate[d] CICA." Id. ¶ 160. Finally, Timberline alleges that BLM "disregarded the FAA requirements and decided to award this $14 million contract to [PJ Helicopters] that could not have complied with the FAA regulations while transporting the firefighters until on or about August 1, 2018." Id. at ¶ 174.

Based on these allegations, Timberline requests that the Court order BLM to resolicit offers for the contract and that the Court award it attorneys' fees and costs. Id. at 25.

Timberline filed a motion for a temporary restraining order and/or preliminary injunction along with its complaint. ECF No. 4. At the conclusion of the oral argument held on the motion on September 28, 2018, the Court indicated that the motion would be denied. It then issued a written opinion denying the motion on October 2, 2018. ECF No. 9.

Pursuant to the Court-ordered briefing schedule, the government filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted on October 5, 2018. ECF No. 11. Timberline filed its opposition to the motion on October 12, 2018, along with a motion for judgment on the administrative record. ECF Nos. 14, 15. The government filed its reply to Timberline's opposition to the motion to dismiss on October 17, 2018. ECF No. 16.

The Court held oral argument on the motion to dismiss via teleconference on October 22, 2018. On October 25, 2018, it suspended further briefing on motions for judgment on the administrative record, pending disposition of the motion to dismiss. ECF No. 18.

**DISCUSSION**

In its complaint and pleadings, Timberline appears to be presenting several interrelated claims. First, it contends that the 2017 Solicitation was defective because it obligated the awardee to use restricted category aircraft to transport firefighters. Timberline's position (which the FAA ultimately adopted), is that transporting firefighters on restricted category aircraft would violate FAA regulations and that, to avoid the violation, the Department of the Interior was required to issue a PAO to the awardee. Timberline contends that BLM's statement that it did not intend to do so, offered during an exchange of questions and answers, rendered the terms of the Solicitation unlawful.

For the reasons set forth below, however, Timberline does not have standing to challenge the lawfulness of the 2017 Solicitation because it is neither an actual nor prospective offeror. It therefore is not an "interested party" within the meaning of 28 U.S.C. § 1491(b)(1), which gives

the Court of Federal Claims "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract."

Timberline's second argument is that when the FAA advised the Department of the Interior in June 2018 that a contractor could not lawfully provide services under the contract unless the Department issued it a PAO, BLM was legally obligated to terminate the contract and re-compete it. Instead, and allegedly in violation of the Competition in Contracting Act, the Department issued a PAO to the awardee, PJ Helicopters. This claim, however, does not involve a violation of law, rule, or regulation "in connection with a procurement" within the meaning of 28 U.S.C. § 1491(b), the agency was not engaged in the acquisition of goods or services when it issued the PAO; it was administering the contract it had entered with PJ Helicopters in 2017.

Finally, Timberline briefly and obliquely references the "cardinal change" doctrine in its complaint. But it has failed to make non-frivolous allegations which would support invocation of that doctrine to establish this Court's jurisdiction. Accordingly, Timberline's complaint must be dismissed in its entirety for lack of jurisdiction.

## I. Standards for Ruling on a Motion to Dismiss Under RCFC 12(b)(1)

In ruling on a motion to dismiss for lack of subject matter jurisdiction, the Court must "accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." LaBatte v. United States, 899 F.3d 1373, 1375 (Fed. Cir. 2018). The court may "inquire into jurisdictional facts" to determine whether it has jurisdiction. Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991). The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); see also CliniComp Int'l, Inc. v. United States, 904 F.3d 1353, 1358 (Fed. Cir. 2018).

## II. Bid Protest Jurisdiction

The Court of Federal Claims has jurisdiction over bid protests in accordance with the Tucker Act, 28 U.S.C. § 1491, as amended by the Administrative Dispute Resolution Act of 1996 § 12 (codified at 28 U.S.C. § 1491(b)). Specifically, the Court has the authority "to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1); see also Sys. Application & Techs., Inc. v. United States, 691 F.3d 1374, 1380–81 (Fed. Cir. 2012) (observing that § 1491(b)(1) "grants jurisdiction over objections to a solicitation, objections to a proposed award, objections to an award, and objections related to a statutory or regulatory violation so long as these objections are in connection with a procurement or proposed procurement").

A party invoking this Court's bid protest jurisdiction "bears the burden of establishing [the] elements [of standing]." Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)) (alterations in original). To possess standing to bring a bid protest, a plaintiff must be an "interested party"—i.e., an actual or prospective bidder (or offeror) who possesses a direct

economic interest in the procurement. Sys. Application & Techs., Inc., 691 F.3d at 1382 (citing Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1359 (Fed. Cir. 2009)); see also Orion Tech., Inc. v. United States, 704 F.3d 1344, 1348 (Fed. Cir. 2013). An actual or prospective offeror has a direct economic interest if it suffered a competitive injury or prejudice as a result of an alleged error in the procurement process. Myers, 275 F.3d at 1370 (holding that "prejudice (or injury) is a necessary element of standing"); see also Weeks Marine, Inc., 575 F.3d at 1359.

### III. Timberline Lacks Standing to Challenge the 2017 Solicitation

Applying the principles set forth above, it is clear that Timberline lacks standing to pursue its challenges to the 2017 Solicitation because it is neither an actual nor a prospective offeror. It is not an actual offeror because it never submitted a proposal in response to the Solicitation. See Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006). And it is no longer a prospective offeror (as it was when it filed its protest with GAO) because "the opportunity to qualify either as an actual or prospective [offeror] ends when the proposal period ends." MCI Telecomms. Corp. v. United States, 878 F.2d 362, 365 (Fed. Cir. 1989).

In this case, Timberline is no longer a prospective offeror because it filed its protest with this court about eighteen months after the solicitation period ended, and more than a year after the contract was awarded. To be sure, the Federal Circuit has recognized a limited exception to the requirement that a plaintiff have filed its protest with the Court of Federal Claims before the close of the solicitation period in order to qualify as a "prospective offeror." But that exception applies only where a protester "diligently and continuously pursued its rights" by filing a GAO protest before the solicitation period ended, "and then, immediately upon dismissal by the GAO, in the Court of Federal Claims." CGI Federal Inc. v. United States, 779 F.3d 1346, 1349 (Fed. Cir. 2015) (emphasis supplied).

Thus, in CGI, the court of appeals concluded that the plaintiff had standing as a prospective bidder where the period of time between GAO's denial of its protest and the plaintiff's complaint in this court was three business days. Id. at 1350. In Rex, by contrast, the putative protester filed an agency protest the day before the solicitation period ended, but then waited more than two months after the agency dismissed its protest—and one month after the contract was awarded—to file a complaint in the Court of Federal Claims. 448 F.3d at 1307. As the court of appeals explained in CGI, the plaintiff in Rex lacked standing because it "failed to continue to pursue its rights in a diligent fashion, and thus ceased to be a prospective bidder." 779 F.3d at 1351.

Timberline cannot qualify as a prospective offeror under this rationale. It filed two protests with GAO, both of which were dismissed in the summer of 2017. But it then waited well over a year after GAO rendered its decisions to file its action in this court. By the time it filed here, PJ Helicopters (which was awarded the contract around the time that GAO dismissed Timberline's first protest) had provided all services contemplated for the first year of the contract.

9

The Court notes that at the oral argument in this case, counsel for Timberline appeared to argue that it should still be treated as a prospective offeror because it was not until August 2018 that it learned that the Department of the Interior was issuing a PAO to PJ Helicopters. This argument lacks merit. Regardless of the initial advice that was then guiding the Department of the Interior's decisions (and which GAO found persuasive), nothing prevented Timberline from pursuing the issue in the Court of Federal Claims immediately after it lost at GAO. Had Timberline done so, then the court could have reviewed and quickly resolved Timberline's contentions regarding whether the Solicitation required the performance of services that conflicted with FAA regulations.

Indeed, had Timberline filed a protest here after it lost at GAO, the Justice Department would have likely immediately sought the views of the FAA's Office of the Chief Counsel. Timberline potentially could have secured relief before BLM awarded the contract to PJ Helicopters. This would have also averted the disruption of the provision of helicopter services and the costs of a new procurement, which would flow from granting Timberline's demand that BLM now terminate the contract with PJ Helicopters and run a new competition.

In short, Timberline failed to diligently pursue its rights as a prospective offeror after GAO denied its protests. Accordingly, the Court agrees with the government that Timberline does not have standing to challenge the 2017 Solicitation.[5]

**IV. This Court Does Not Have Jurisdiction over Timberline's Claim that BLM Violated the Competition in Contracting Act When It Issued a PAO to PJ Helicopters**

Derivative of its challenge to the 2017 Solicitation, Timberline contends that it was unlawful for BLM to issue a PAO to PJ Helicopters in August 2018, after the FAA advised it that PJ Helicopters could not lawfully provide its services to BLM without one. According to Timberline, BLM was obligated instead to terminate the contract and open a new competition. This Court agrees with the government that it lacks jurisdiction to consider this claim.

Under 28 U.S.C. § 1491(b)(1), this Court has jurisdiction over claims by any interested party objecting to "any alleged violation of statute or regulation in connection with a procurement or proposed procurement." Timberline contends that it has presented the Court with such a claim, citing its contention that it was "deprived of the opportunity to compete in August 2018 when Defendant decided to issue the PAO to awardee only in violation of CICA—after Defendant officially advised all bidders that it would issue no PAO in 2017." Pl.'s Opp. to Def.'s Mot. to Dismiss ("Pl.'s Opp.") at 5, ECF No. 14.

---

[5] In light of its conclusion that Timberline is not an interested party with respect to the 2017 Solicitation, the Court does not address the government's contention that Timberline lacks standing because it fails to show that it had a direct economic interest in the 2017 procurement.

The problem for Timberline, however, is that it was not denied the opportunity to compete on a procurement in August 2018 because BLM never initiated any procurement in August 2018. Instead, it issued a PAO to the incumbent contractor and apparently intends to exercise its option to have PJ Helicopters continue to provide services in the upcoming season based on the contract awarded in 2017.

Timberline cites Distributed Solutions v. United States, 539 F.3d 1340 (Fed. Cir. 2008), in support of its argument that this Court has jurisdiction over its claim that BLM violated the Competition in Contracting Act when it issued a PAO to PJ Helicopters rather than re-competing the contract. That decision, however, does not support Timberline's position; to the contrary, it undermines it.

In Distributed Solutions, the Department of State and the U.S. Agency for International Development issued an RFI asking software vendors to submit self-assessments of their products that would help the two agencies develop a common computer platform. Id. at 1342. After reviewing the responses to the RFI, the government decided not to procure any products or services on its own, but to instead to have the incumbent contractor select vendors that could provide the software necessary to meet the government's needs. Id. at 1342–43.

The plaintiffs in Distributed Solutions were software vendors who had submitted responses to both the government's RFI and a subsequent RFI issued by the incumbent contractor. Id. at 1343. They filed suit in the Court of Federal Claims alleging that the government committed "a number of statutory and regulatory violations . . . in choosing to forego the direct competitive procurement process and tasking [the incumbent contractor] with the responsibility of selecting software vendors indirectly." Id. at 1345. "These allegations include[d] violations of the Competition in Contracting Act, 31 U.S.C. § 3551 et seq., the Small Business Act, 15 U.S.C. § 631(j)(3), and various Federal Acquisition Regulations." Id.

The critical jurisdictional issue before the court of appeals in Distributed Solutions was "whether the contractors' protest [was] 'in connection with a procurement or a proposed procurement' under the scope of §1491(b)." Id. The court of appeals found that it was, and therefore concluded that it had jurisdiction over the plaintiffs' claims. Id. at 1346.

The court of appeals began by observing that the phrase, "'in connection with a procurement or proposed procurement' by definition involves a connection with any stage of the federal contracting acquisition process, including 'the process for determining a need for property or services.'" Id. "To establish jurisdiction pursuant to this definition," the court of appeals explained, "the contractors must demonstrate that the government at least initiated a procurement, or initiated 'the process for determining a need' for acquisition and assistance solutions" for the agency. Id. The court of appeals held that this requirement had been met in Distributed Solutions because "the government used an RFI to solicit information from outside vendors, and then used this information to determine the scope of services required by the government." Id. And "[a] proposed procurement, like a procurement, begins with the process for determining a need for property or services." Id.

In this case, by contrast, BLM did not initiate a procurement when it issued the PAO to PJ Helicopters; to the contrary, issuing the PAO was an act BLM undertook in the course of

11

administering a contract that it had already awarded in 2017. Timberline's argument that it can protest BLM's decision to not initiate a new procurement but to instead continue to use the services of PJ Helicopters lacks merit under the rationale of Distributed Solutions.

Finally, the Court notes that the phrase "cardinal change" makes a brief, cameo appearance in two of Timberline's pleadings. See Compl. ¶¶ 151–52 (alleging that the issuance of a PAO to PJ Helicopters was a "cardinal change [that] has completely changed the compliance environment in which the Apparent Awardee had to operate"); Pl.'s Mot. for J. on the Admin. Record ("MJAR") at 13 (asserting that "Plaintiff pointed out [in its complaint] that the issuance of the PAO is tantamount to a cardinal change in the contract"). But Timberline's passing use of the phrase "cardinal change" does not constitute a non-frivolous allegation of a statutory violation, sufficient to invoke this Court's jurisdiction. See Distributed Solutions, 539 F.3d at 1345 n.1 ("A non-frivolous allegation of a statutory or regulatory violation in connection with a procurement or proposed procurement is sufficient to establish [this Court's] jurisdiction [under 28 U.S.C. § 1491(b)(1)].").

In AT&T Communications, Inc. v. Wiltel, Inc. ("AT&T"), the court of appeals held that if the government effects a modification of a contract that constitutes a "cardinal change," it may trigger the Competition in Contracting Act's requirement that it conduct a "full and open competition through the use of competitive procedures." 1 F.3d 1201, 1205 (Fed. Cir. 1993) (citing 41 U.S.C. § 253(a)(1)(A) (1988) (current version at 41 U.S.C. § 3301(a)(1) (2012)). "In determining whether a modification falls within CICA's competition requirement, th[e] court examines whether the contract as modified materially departs from the scope of the original procurement." Id.

Here, Timberline does not claim (nor could it) that the issuance of the PAO modified the contract at all. PJ Helicopters will provide the same services after the PAO was issued as it did before. It will provide those services within the same time period and for the same price. See id. (explaining that a cardinal change exists where there is "an alteration in the work so drastic that it effectively requires the contractor to perform duties materially different from those originally bargained for") (internal citations and quotations omitted); see also Portfolio Disposition Mgmt. Grp. LLC v. United States, 64 Fed. Cl. 1, 12 (2005) (discussing the factors a court should consider in determining whether modification "materially departs" from the scope of the original procurement, which include: "(1) whether the modification is of a nature which potential offerors would reasonably have anticipated; and (2) whether the modification substantially changes the type of work, performance period, and costs as between the original contract and the modified contract"); Northrop Grumman Corp. v. United States, 50 Fed. Cl. 443, 466 (2001) (describing factors that courts have considered under the cardinal change doctrine, including "[c]hanges in the type of product or service that were not anticipated due to their lack of resemblance to the original procurement," "[s]ignificant addition or subtraction of the quantity of work," and "[a]dditional time spent on performance of a contract . . . when such time is extended in order to add significantly more quantity or new requirements to the contract").

Timberline's assertion—that the issuance of the PAO "completely changed the compliance environment in which the Apparent Awardee had to operate" (Compl. ¶ 152)—does not invoke the elements of the cardinal change doctrine. Whatever a change in the "compliance environment" means, it is not a modification of the contract. Accordingly, the Court concludes

that Timberline has failed to make a non-frivolous allegation of a cardinal change sufficient to invoke this Court's jurisdiction.

## CONCLUSION

For the foregoing reasons, the government's motion to dismiss is **GRANTED** for lack of subject matter jurisdiction. Accordingly, Plaintiff Timberline's complaint is **DISMISSED** without prejudice. Each party shall bear its own costs.

**IT IS SO ORDERED.**

                                                                              s/ Elaine D. Kaplan
                                                                              ELAINE D. KAPLAN
                                                                              Judge